Entered: March 31st, 2025
Signed: March 31st, 2025



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | |
|---|---|
| In re: <br> GLOBAL ENERGY SERVICES, LLC, <br> Debtor. | CASE NO. 21-17305-NVA <br> CHAPTER 7 |
| ZVI GUTTMAN, CH. 7 TRUSTEE, <br> Plaintiff, <br> v. <br> EBF HOLDINGS, LLC, <br> Defendant. | ADVERSARY NO. 23-00188 |

## MEMORANDUM OPINION

In this adversary proceeding, the chapter 7 trustee (the "Trustee"), seeks to recover approximately $145,000 that the debtor, Global Energy Services, LLC ("Global"), paid to the defendant, EBF Holdings, LLC d/b/a Everest Business Funding ("EBF") and to disallow the proof of claim filed by EBF. [ECF No. 13]. EBF filed a motion to dismiss the Trustee's amended complaint (the "Motion to Dismiss"), to which the Trustee filed a brief in opposition and EBF filed a reply in support. [ECF Nos. 18, 26, 30].

The underlying issue in this case involves a pre-petition agreement between EBF and Global entitled "Revenue Based Financing Agreement" (the "Funding Agreement"),[1] which is what is known in the industry as a merchant cash advance ("MCA") agreement.[2] A threshold question raised in this case is whether the MCA agreement constitutes a loan or a sale. The Trustee maintains that the Funding Agreement constitutes a disguised loan and among other things, is unenforceable because it has a usurious rate of interest. EBF insists that it is a true sale. The Court takes this opportunity to review relevant decisional law applied to MCA agreements, and in particular, to consider rulings that have responded to the post-202 development of New York law (the law that governs the majority of MCA agreements, including the MCA agreement under consideration in this case). As discussed later, this Court has determined to adopt the majority view for purposes of this case – namely, to apply the non-exhaustive three-factor test articulated in *LG Funding, LLC v. United Senior Properties of Olathe, LLC*, 122 N.Y.S.3d 309 (2020).

For the reasons that follow and as set forth herein, EBF's motion to dismiss will be granted, in part, and denied, in part.

---

[1] A copy of the Funding Agreement is attached to EBF's proof of claim and as Exhibit 2 to the Trustee's amended complaint.

[2] "MCA agreements are financial products, often marketed to small businesses through high-pressure sales operations resembling 'boiler rooms,' that purport to purchase at a discount a portion of a business's future receivables." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 241 (S.D.N.Y. 2022), *motion to certify appeal denied*, 2022 WL 3677931 (S.D.N.Y. Aug. 25, 2022).

> MCAs are intended to provide financing to merchants in a way that differs from a traditional loan. In an MCA, the "purchaser" (here, EBF) pays the "seller" (here, US Info) for the right to receive a percentage of the seller's future accounts receivable. The seller receives upfront financing but its repayment obligations may be more onerous than those of a loan. This is because the purchaser assumes the risk that the seller's future accounts receivable may decrease or stop altogether, with the purchaser suffering any resulting loss.

*US Info. Grp. LLC v. EBF Holdings, LLC*, No. 22-CV-6661 (PKC), 2023 WL 6198803, at *1 (S.D.N.Y. Sept. 22, 2023).

**Jurisdiction**

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.  Under 28 U.S.C. § 157(a) and its Local Rule 402, the United States District Court for the District of Maryland has referred this proceeding to this Court.  This is a statutorily core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2).  The Court has constitutional authority to enter final orders in this matter.  To the extent this Court lacks such constitutional authority, this decision constitutes the Court's report and recommendation.

**Relevant Background**

Global is a Maryland-based company that provides environmental services designed to increase energy efficiency in buildings through products and systems that decrease energy use and water consumption.  On June 1, 2021, Global executed the Funding Agreement with EBF, pursuant to which EBF agreed to buy $290,000 in Global's future receipts for a purchase price of $200,000.  The Funding Agreement provided for Global to make daily payments to EBF, from an EBF-approved bank account, in an amount calculated to reflect a percentage of Global's average monthly sales.[3]  The Funding Agreement characterizes the transaction as a sale and provides that it is governed by, and construed under, New York law.

Global filed a chapter 11 petition on November 19, 2021.[4]  Between June 1, 2021 and the petition date, EBF received approximately $145,000 in daily payments pursuant to the Funding Agreement (the "Transfers").  EBF filed a proof of claim asserting a secured claim in the amount

---

[3] The operative language of the Funding Agreement provides that

> [Global] hereby sells, assigns and transfers to [EBF], without recourse, upon payment of the Purchase Price, the Purchased Amount of Future Receipts by delivering to [EBF] the Specified Percentage of the proceeds of each future sale by [Global].

Funding Agreement at 1.

[4] On January 28, 2022, this bankruptcy case was converted to a case under chapter 7 on Global's motion.

3

of $146,525.92. The Trustee commenced the instant adversary proceeding on August 2, 2023 and filed an amended complaint on October 25, 2023 (the "Amended Complaint"). [ECF Nos. 1, 13]. The Amended Complaint contains nine causes of action which, collectively, seek to recover the $145,000 in payments that EBF received from Global pre-petition and to disallow EBF's claim for the balance it is allegedly owed under the Funding Agreement:

- Count I (Claim Objection / Declaratory Relief). The Trustee seeks to disallow EBF's proof of claim on the theory that the claim lacks the evidentiary support required by Rule 3001 of the Federal Rules of Bankruptcy Procedure, and a declaration that the Funding Agreement is unenforceable because it is a usurious, unenforceable loan and not a sale.

- Counts II and III (Avoidance of Fraudulent Transfers – Loan or Sale). The Trustee seeks to avoid the Transfers as fraudulent pursuant to § 548(a)(1)(B) of the Bankruptcy Code[5] (Count II assumes the agreement is a loan, while Count III assumes the agreement is a sale).

- Counts IV and V (Avoidance of Fraudulent Transfers – Loan or Sale). The Trustee seeks to avoid the Transfers as fraudulent pursuant to § 544(b) of the Bankruptcy Code and Md. Comm. Law Code Ann. §§ 15-202 and 15-204 (Count IV assumes the agreement is a loan, Count V assumes the agreement is a sale).

- Count VI (Avoidance of Preference). The Trustee seeks to avoid the Transfers as preferences pursuant to § 547(b) of the Bankruptcy Code.

- Count VII (Turnover). The Trustee seeks turnover of the Transfers pursuant to § 542 of the Bankruptcy Code.

- Count VIII (Disallowance of Claim). The Trustee seeks disallowance of EBF's proof of claim pursuant to § 502(d) of the Bankruptcy Code.

- Count IX (Transferee Liability). The Trustee seeks recovery of the Transfers pursuant to § 550 of the Bankruptcy Code.

EBF filed a motion to dismiss the Amended Complaint, arguing pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, that the Trustee had failed to state any cognizable claim for relief. EBF

---

[5] 11 U.S.C. § 101 *et seq.*

contends that, under New York cases interpreting New York law (which governs the Funding Agreement), the Funding Agreement is not a loan, but a sale to which a claim (or an affirmative defense in the context of the Trustee's claim objection) of usury cannot apply.  As a result, EBF argues, the Trustee cannot state a claim for relief to disallow EBF's claim under a usury theory (Count I) or to avoid the Transfers under §§ 544 and 548 on the theory that the Funding Agreement is a loan (Counts II and IV).  Moreover, EBF states that the amount Global received ($200,000) far exceeds the amount of the Transfers ($145,000), such that the Trustee cannot plead an essential element of its §§ 544 and 548 claims: that Global did not receive reasonably equivalent value in exchange for the Transfers.  EBF also states that the Trustee cannot plead an essential element of his preferential transfer and turnover counts – that the Transfers constitute property of the estate – because, pursuant to the Funding Agreement, Global's sale to EBF extinguished all of Global's legal or equitable interests in the Transfers pre-petition.  Finally, EBF contends that the disallowance and recovery counts must be dismissed because they necessarily require success on one of the avoidance claims.

Briefs in opposition to, and in support of, the Motion to Dismiss were filed by the Trustee and EBF, respectively, and the Court conducted a hearing.

## Legal Standards Governing Motions to Dismiss

To defeat a motion to dismiss under Civil Rule 12(b)(6), as made applicable to this adversary proceeding by Bankruptcy Rule 7012, a complaint must contain factual allegations sufficient to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re TMST, Inc.*, 610 B.R. 807, 823–24 (Bankr. D. Md. 2019).  When assessing plausibility, well-pleaded factual allegations must be accepted as true and such facts and all reasonable inferences derived from those allegations must be viewed in the light most favorable to the non-moving

party. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Plausibility is established when the complaint's factual allegations give rise to an inference of liability sufficient to move the claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678.

In deciding a motion to dismiss, the Court "'must accept as true all of the factual allegations contained in the complaint,' drawing 'all reasonable inferences' in the non-moving party's favor." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)), *as amended* (Jan. 20, 2017). *See also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999); *Ibarra*, 120 F.3d at 474; *In re TMST, Inc.*, 610 B.R. at 823–24. The Court is not required to accept as true allegations that are contradicted by exhibits to the complaint or by matters subject to judicial notice. *See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

### Analysis and Discussion – MCA Agreements

As stated, the Funding Agreement is what is known in the industry as an MCA agreement, and the threshold issue raised in the Amended Complaint and the Motion to Dismiss is whether the Funding Agreement is a loan or a sale. In Count I, the Trustee objects to EBF's claim on the basis that it is unenforceable because the Funding Agreement is "a disguised loan that required [Global] to pay usurious interest and thus is *void ab initio* under New York law." [ECF No. 13 at 8]. Paragrah 4.5 of the Funding Agreement provides that it is governed and construed by New York law, and neither party has suggested that another state's law governs. This Court's analysis applies relevant New York law to determine whether the Trustee has alleged sufficient facts to plausibly state a claim for usury.

6

Under New York law, "[t]he rudimentary element of usury is the existence of a loan or forbearance of money and where there is no loan there can be no usury. In determining whether a transaction is usurious, the law looks not to its form, but to its substance, or real character." *IBIS Capital Group, LLC v. Four Paws Orlando LLC*, No. 608586/16, 2017 WL 1065071, at *1 (N.Y. Sup. Ct. Mar. 10, 2017) (internal citations omitted). *See also K9 Bytes, Inc. v. Arch Cap. Funding, LLC*, 57 N.Y.S.3d 625, 632 (N.Y. Sup. Ct. 2017) ("In order to determine [whether the contracts are usurious], the Court must first determine whether the contracts are loans or not."); *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (1992) ("Usury laws apply only to loans or forbearances, not investments. If the transaction is not a loan, there can be no usury, however unconscionable the contract may be.").

Moreover, "[i]n New York, there is a presumption that a transaction is not usurious." *K9 Bytes*, 57 N.Y.S.3d at 632. *See also Womack v. Cap. Stack, LLC*, No. 1:18-CV-04192 (ALC), 2019 WL 4142740, at *4 (S.D.N.Y. Aug. 30, 2019) ("There is a strong presumption against a finding of usury."); *Wilkinson Floor Covering, Inc. v. Cap Call, LLC*, 108 N.Y.S.3d 288 (N.Y. Sup. Ct. 2018) ("[i] in New York there is a predisposition in this State against declaring that contracts are usurious."); *Zhavoronkin v. Koutmine*, 860 N.Y.S.2d 561, 562 (2008) ("There is a strong presumption against a finding of usury.").

New York courts apply a non-exhaustive three-factor test to guide the loan-or-sale analysis:

(1) whether there is a reconciliation provision in the agreement;

(2) whether the agreement has a finite term; and

(3) whether there is any recourse should the merchant declare bankruptcy.

*US Info. Grp.*, 2023 WL 6198803, at *6 (quoting *LG Funding, LLC v. United Senior Properties of Olathe, LLC*, 122 N.Y.S.3d 309, 312 (2020)). These factors do not determine the outcome, but

serve "only [as] a guide to analysis." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120 (LJL), 2022 WL 1997207, at *9 (S.D.N.Y. June 6, 2022). The keystone consideration concerns the transfer of risk:

> Ultimately, the three guides reduce to one overarching principle. The hallmark of a loan is that the lender is absolutely entitled to repayment under all circumstances, or put otherwise, the principal sum is repayable absolutely. The root of the analysis involves the question of whether the transaction involves a transfer of risk.

*Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 452 (S.D.N.Y. 2022) (cleaned up). *See also AKF, Inc. v. Haven Transportation Bus. Sols., Inc.*, No. 1:22-CV-269 (MAD/CFH), 2024 WL 2941746, at *6 (N.D.N.Y. June 11, 2024) (outlining the three-factor test "to analyze who bears the ultimate risk"); *Haymount*, 609 F. Supp. 3d at 248 (rejecting mechanical application of *LG Funding* and finding that "the *LG Funding* decision's holding is ultimately about whether the transaction represented a real transfer of risk"); *K9 Bytes, Inc.*, 57 N.Y.S.3d at 632 (fundamental inquiry is "whether or not defendant is absolutely entitled to repayment under all circumstances"); *Rubenstein v. Small*, 75 N.Y.S.2d 483, 486 (1st Dept. 1947) ("For a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard.").

"The law is well-settled that the parties' intention should be determined from the language employed within the four corners of the agreement, and that where the language is clear and unequivocal, interpretation is a matter of law to be determined by the Court." *Transmedia Rest. Co. v. 33 E. 61st St. Rest. Corp.*, 710 N.Y.S.2d 756, 761 (Sup. Ct. 2000). *See also Cavalry LLC v. EBF Holdings, LLC*, No. 003081/2021, 2021 WL 5868324, at *8 (N.Y. Sup. Ct. Oct. 05, 2021) ("Agreements are construed in accordance with the intent of the parties and the best evidence of the parties' intent is what they express in their written contract.") (internal citations omitted).

Not all courts considering whether MCA agreements are loans or sales have agreed in their approach or their application of *LG Funding*.[6] This Court has exhaustively reviewed case law from New York federal and state courts, along with case law from other federal jurisdictions, concerning the appropriate analytical framework and applicable test when faced with competing claims related to the characterization of MCA agreements. The Court's review has revealed that, by an overwhelming majority, courts apply the *LG Funding* non-exhaustive three-factor test to fact patterns similar to the one found in this case.[7] (The Court has uncovered no decisional law by the Fourth Circuit directly addressing the test for analysis of the MCA agreement as a disguised loan or a sale. The Fourth Circuit has, however, endorsed a framework for analzying whether a related form of agreement – a "factoring agreement" – is a sale or a disguised loan, and that decision, discussed *infra*, is instructive.)

This Court is convinced that the analysis followed by the overwhelming majority of courts is persuasive and should be applied to this case to determine whether the MCA agreement at issue should be treated as a loan or a sale. Accordingly, the Court adopts the test set forth in the 2020

---

[6] It is interesting to note that the non-exhaustive three-factor test articulated in *LG Funding* predates that 2020 decision, though in a less organized format. *See, e.g.*, *IBIS Capital Group* 2017 WL 1065071, at *4–6; *K9 Bytes*, 57 N.Y.S.3d at 632–33. And there is a substantial body of New York case law concluding that MCA transactions similar to the Funding Agreement here (i.e., a purchase of future receivables, a daily payment amount calculated as a percentage of future sales, a process to reconcile that daily payment based on actual receipts, and with contract language similar to that in this Funding Agreement) are sales, not loans. *See Womack* 2019 WL 4142740, at *7 n.9 (collecting cases).

[7] The Court has unearthed a few bankruptcy court decisions analyzing an MCA agreement to determine if it is a disguised loan or a true sale. Some have applied what will come to be colloquially referred to as the *LG Funding* factors. *See, e.g.*, *In re GMI Grp., Inc.*, 606 B.R. 467, 484–85 (Bankr. N.D. Ga. 2019). Others have considered a list of eight factors collected in a bankruptcy journal article (Robert D. Aicher William J., *Characterization of A Transfer of Receivables As A Sale or A Secured Loan Upon Bankruptcy of the Transferor*, 65 AM. BANKR. L.J. 181, 186–94 (1991), which appear to be an amalgamation of factors various courts have considered, rather than a different or discrete multi-factor test like the one described in *LG Funding*. *See, e.g.*, *In re Shoot The Moon, LLC*, 635 B.R. 797, 813 (Bankr. D. Mont. 2021).; *Matter of Cornerstone Tower Servs., Inc.*, No. A17-4051, 2018 WL 6199131, at *5 (Bankr. D. Neb. Nov. 9, 2018); *In re R&J Pizza Corp.*, No. 14-43066-CEC, 2014 WL 12973408, at *2 (Bankr. E.D.N.Y. Oct. 14, 2014) (collecting cases); *In re Jersey Tractor Trailer Training, Inc.*, 2007 WL 2892956, at *7 (Bankr. D.N.J. Sept. 28, 2007), *aff'd sub nom. In re Jersey Tractor Trailer Training Inc.*, , 2008 WL 2783342 (D.N.J. July 15, 2008), *aff'd in part, vacated in part, remanded*, 580 F.3d 147 (3d Cir. 2009).

*LG Funding* case, as the Second Circuit and several federal district courts in New York have done,[8] and applies the three factors, and any others it finds relevant, in guiding its analysis whether the parties entered into a loan or a sale.

Reconciliation Provision

The Funding Agreement contains a reconciliation provision which states that Global may request a reconciliation of the daily payment amount it is required to remit to EBF and that EBF "shall" adjust that daily payment amount upon EBF's verification of the information Global is required to provide with its reconciliation request. Funding Agreement at 2. As written, the reconciliation provision is mandatory in that it appears to give EBF no discretion on reconciling the daily payment amount if Global has provided the required information. Courts that considered similar reconciliation provisions concluded that they are evidence of a sale, not a loan. *See, e.g.*, *US Info. Grp.*, 2023 WL 6198803, at *8; *Streamlined Consultants, Inc. v. EBF Holdings LLC*, No. 21-CV-9528 (KMK), 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022); *Hi Bar Capital LLC v. Parkway Dental Services, LLC*, No. 533245/2021, 2022 WL 885723, at *2 (N.Y. Sup. Ct. Mar. 25, 2022); *Am. Water Restoration, Inc. v. AKF Inc.*, 157 N.Y.S.3d 919 (N.Y. Sup. Ct. 2022). In contrast, when finding that a reconciliation provision is illusory or meaningless, and thus that the underlying agreement is more likely a loan than a sale, courts have pointed to discretionary language in the reconciliation provision that permits, but does not require, the purchaser to reconcile the daily payment amount. *See, e.g.*, *Fleetwood Servs.*, 2022 WL 1997207, at *13; *LG Funding*, 122 N.Y.S.3d at 312.

---

[8] *See, e.g.*, *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, No. 22-1885-CV, 2023 WL 3882697 (2d Cir. June 8, 2023); *Rsrv. Funding Grp. LLC v. California Organic Fertilizers, Inc.*, No. 24-CV-1112 (ARR) (LB), 2024 WL 1604195 (E.D.N.Y. Apr. 12, 2024); *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402 (S.D.N.Y. 2022); *Haven Transportation*, 2024 WL 2941746.

It is evident from the language in the Funding Agreement that the reconciliation provision here is mandatory, not discretionary. The Trustee's arguments that the reconciliation provision is illusory are neither plausible nor supported by the facts in this case. The Trustee has not alleged that the reconciliation provision did not function as intended, that EBF made unreasonable demands for information under the provision so as to render it functionally impossible for Global to obtain reconciliation, or that – as in the *Fleetwood* case – the reconciliation provision contains any default language triggered by Global's failure to pay the daily amounts. *See, e.g.*, *US Info. Grp.*, 2023 WL 6198803, at *7 ("Plaintiffs do not allege that the Agreements' reconciliation process was unduly onerous or had a sham quality."). Nor does the Trustee allege that Global ever even sought a reconciliation. The nature of the reconciliation provision in the instant Funding Agreement supports a finding that the Funding Agreement is a sale, not a loan. *See, e.g.*, *Rapid Cap. Fin., LLC v. Natures Mkt. Corp.*, 66 N.Y.S.3d 797, 801 (N.Y. Sup. Ct. 2017) (rejecting seller's argument that reconciliation provision was illusory because seller could not "control or [] enforce [purchaser's] compliance with the reconciliation procedure"); *Hi Bar Capital*, 2022 WL 885723, at *2 (finding reconciliation provision that permitted purchaser to request additional documentation mandatory and not illusory).

<u>Finite Term</u>

The second guiding factor is whether the Funding Agreement explicitly or implicitly contains a finite term, which is indicative of a loan, or an indeterminate term, which is indicative of a sale. This factor goes hand-in-glove with the reconciliation provision factor: since the daily payment amount could be reconciled to more closely reflect Global's actual receipts, and since those receipts depended on the generation of sales and payments from customers, the parties could not have known when the Agreement would terminate with full payment to EBF. "[A]s the amount

of the monthly payments could change, the term of the agreement was not finite." *Principis Cap., LLC v. I Do, Inc.*, 160 N.Y.S.3d 325, 327 (2022). The Funding Agreement here provides in relevant part as follows: "[T]here is no time period during which the Purchased Amount must be collected by the Purchaser." Funding Agreement at 2. Further, the Funding Agreement contains no explicit term or ending date. *See generally id.*

> [T]he Agreement's lack of a specific ending date is consistent with the contingent nature of each and every collection of future sales proceeds under the contract. Because IBIS' collection of sales proceeds is contingent upon Four Paws actually generating sales and those sales actually resulting in the collection of revenue, neither party could have known when the Agreement might end because IBIS' collection of sales proceeds was wholly contingent upon the outside factor of customers actually shopping at Four Paws and paying for products and services. The existence of this uncertainty in the length of the Agreement is an express recognition by the parties of the wholly contingent nature of this Agreement.

*IBIS Capital Group*, 2017 WL 1065071, at *3.

Recourse in the Event of Bankruptcy or Going Out of Business

The third factor considers whether EBF "has any recourse in the event of [Global's] bankruptcy." *Pirs Cap., LLC v. D & M Truck, Tire & Trailer Repair Inc.*, 129 N.Y.S.3d 734, 740 (N.Y. Sup. Ct. 2020). In two other cases involving EBF, New York courts have discussed this factor at length.

> Third and finally, the Funding Agreement does not contain any provisions establishing any recourse for EBF should Streamlined Consultants declare bankruptcy. The declaration of bankruptcy does not constitute an event of default under the terms of the Funding Agreement, (*see* Funding Agreement 7–8), nor does the declaration of bankruptcy constitute a breach of the Funding Agreement, (*see id.* at 3 ("[Streamlined Consultants] going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement")). Moreover, the only other two provisions in the Funding Agreement which make any reference to bankruptcy are a warranty that Streamlined Consultants was not insolvent at the time the Funding Agreement was signed and a clause that requires Streamlined Consultants to notify EBF in the event Streamlined Consultants declares bankruptcy.

> (*See id.* at 7, 8.) Therefore, this factor also militates against a finding that the Funding Agreement is a usurious loan.

*Streamlined Consultants*, 2022 WL 4368114, at *5.

> Bankruptcy is not among the events of default identified in paragraph 3.1 of the Agreements. The Agreements' "Purchaser Acknowledgement" provision states: "Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement." Paragraph 2.2 states that "Purchaser assumes the risk that … the full Purchased Amount may never be remitted because Seller's business went bankrupt …." This LG Funding factor weighs against the plausibility of plaintiffs' assertion that the transactions were loans and not MCAs.

*US Info. Grp.*, 2023 WL 6198803, at *9.

Like the agreements in *Streamlined* and *US Info*, the Funding Agreement in this case does not list bankruptcy as an event of default and does not give EBF recourse against Global if Global files for bankruptcy. Like the agreements in *Streamlined* and *US Info*, the Funding Agreement in this case acknowledges the possibility that Global may go bankrupt or out of business and squarely places the risk of either scenario with EBF, not Global.

<u>The Parties' Intent and the Transfer of Risk</u>

As previously discussed, the three *LG Funding* factors are non-exhaustive and not determinative of the outcome in deciding whether the Funding Agreement is a sale or a loan. The overarching consideration is whether the parties intended that the Funding Agreement transfer the risk of potential non-payment from Global to EBF and whether the Funding Agreement accomplishes that purpose (and thus constitutes a sale), or whether EBF is absolutely entitled to repayment in any circumstances (in which case the Funding Agreement is a loan).[9] "As the Second

---

[9] Although the Fourth Circuit has not spoken directly to whether an MCA agreement constitutes a loan or a sale, it has considered whether a factoring agreement was a disguised loan or a true sale of accounts receivable. *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 598 (4th Cir. 2010). The court affirmed the district court's decision that found the agreement to be a disguised loan and focused on the transfer of risk embodied in the agreement:

Circuit has explained, when determining whether a transaction was a true sale of receivables, '[t]he root of [the analysis] is the transfer of risk.'" *Haymount*, 609 F. Supp. 3d at 247 (quoting *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1069 (2d Cir. 1995)). *See also Fleetwood Services*, 2022 WL 1997207, at *10 ("The ultimate question, like that in *LG Funding*, relates to whether the transaction involves a transfer of risk.").[10]

"[W]hen determining whether a transaction constitutes a usurious loan it must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it." *Zanfini v. Chandler*, 197 A.D.3d 594, 595 (2d Dep't 2021) (cleaned up). At the same time, "[a] fundamental tenet of contract law is that agreements are construed in accordance with the intent of the parties and the best evidence of the parties' intent

---

> Whether the agreement is a secured loan or a true purchase of receivables turns on whether there was an actual transfer of the risk of loss from Robison Farms to AgriCap. A transfer of risk occurs when the account seller's debt is extinguished, and the account purchaser's "risk with regard to the performance of the accounts is direct." The determination of whether there was a true purchase of receivables requires a review of the substance of the parties' relationship, and all terms and provisions of the Agreement, without regard to how the transaction is labeled. This entails a review of whether there are other indicia of a secured transaction, such as a security agreement, UCC–1 financing statement, internal charges, and personal guarantees.

*Nickey Gregory Co., LLC v. AgriCap, LLC*, 592 F. Supp. 2d 862, 875 (D.S.C. 2008), *aff'd in part, vacated in part, remanded*, 597 F.3d 591 (4th Cir. 2010) (internal citations omitted).

This Court points to this case as instructive because there are a number of functional similarities between factoring agreements and MCA agreements. But there are also significant differences, including that (1) factoring agreements are based on existing, unpaid invoices while MCA agreements are based on future sales projections; (2) factoring agreements involve lower risk because funding is tied to actual receivables, versus future sales; and, (3) factoring agreements typically have lower fees than MCA agreements because of the lower risk.

[10] The emphasis on the transfer of risk is also the hallmark of cases that apply multi-factor tests different than the *LG Funding* test:

> As with many multi-factor tests, no individual factor or combination thereof is determinative. The inquiry is not a quantitative exercise susceptible to replication by a computer program, but a comprehensive and heavily contextual endeavor. A court's "[a]nalysis of the various factors and their impact on the nature of the parties' agreement is fact-intensive, and a determination must be made based on the totality of the circumstances." ***That said, a consideration that overlays and unites the factors is how the parties allocated risk.***

*Shoot The Moon*, 635 B.R. at 813 (internal citations and quotations omitted) (emphasis added).

14

is what they express in their written contract." *Goldman v. White Plains Ctr. for Nursing Care, LLC*, 896 N.E.2d 662, 664 (2008). *See also Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013) ("Under New York law, written agreements are construed in accordance with the parties' intent…"); *Slamow v. Del Col*, 79 N.Y.2d 1016, 1018 (1992) (best evidence of parties' intent "is what they say in their writing").

The Funding Agreement here contains the following pertinent terms and clauses:

- Seller hereby sells, assigns and transfers to Purchaser, without recourse, upon payment of the Purchase Price, the Purchased Amount of Future Receipts by delivering to Purchaser the Specified Percentage of the proceeds of each future sale by Seller.

- There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser. Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. Purchaser is entering into this Agreement knowing the risks that Seller's business may slow down or fail, and Purchaser assumes these risks based on Seller's representations warranties and covenants in this Agreement, which are designed to give Purchaser a reasonable and fair opportunity to receive the benefit of its bargain.

- Seller represents and warrants that it is selling the Purchased Amount of Future Receipts to Purchaser in the ordinary course of Seller's business and the Purchase Price paid by Purchaser is good and valuable consideration for the sale. Seller is selling a portion of a future revenue stream to Purchaser at a discount, not borrowing money from Purchaser. Purchaser assumes the risk that Future Receipts will be remitted more slowly than Purchaser may have anticipated or projected because Seller's business has slowed down, or the full Purchased Amount may never be remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business. By this Agreement, Seller transfers to Purchaser full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein.

*See generally* Funding Agreement at 1, 2, 5. In considering language identical to this, the Supreme Court of New York concluded that "[i]t is plain from the language of the Agreement that the parties intended the transaction to be a sale of a percentage of Cavalry's future receipts and not a loan." *Cavalry*, 2021 WL 5868324, at *4.

15

Considered both as a whole and within the framework of the three-factor *LG Funding* test, this Court concludes that the Funding Agreement unambiguously transfers the risk of non-payment from Global to EBF such that under the Funding Agreement, EBF is not entitled to repayment absolutely.

> Having weighed all of the factors, the Court finds that the Arch agreements are sufficiently risky such that they cannot be considered loans, as a matter of law. Under no circumstances could Arch be assured of repayment, because its agreements are contingent on a merchant's success, and the term is indefinite. Accordingly, the Court dismisses the usury claims against Arch in their entirety.

*K9 Bytes*, 57 N.Y.S.3d at 633–34 (dismissing usury claims even though court concluded that recourse factor weighed <u>in favor</u> of loan finding). *See also Cavalry*, 2021 WL 5868324, at *8 ("Based on the foregoing analysis under the rubric articulated by the Second Department in [*LG Funding*], the Court concludes as a matter of law that the Agreement is not ambiguous, and that it unambiguously evidences a purchase and sale of a percentage of Cavalry's future receivables, not a loan.").

The existence of language in the Funding Agreement granting EBF a security interest in Global's future sales and providing a personal guaranty does not alter the analysis.  Unlike the security interest at issue in *Fleetwood Services* which was on "all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory" (2022 WL 1997207, at *4) and which supported a finding in that case that the MCA agreement was really a disguised loan, the security interest at issue here is limited to Global's future sales and does not support a finding that the Funding Agreement is a loan. *See, e.g.*, *US Info Grp.*, 2023 WL 6198803, at *9. And the personal guaranty executed in support of the Funding Agreement concerns Global's obligations to do or not do certain things, but critically does not guarantee payment to EBF in the event Global defaults. *See* Funding Agreement at 9, ¶ 5.1.  Because EBF cannot rely on the

personal guaranty to be repaid absolutely and the personal guaranty does not shift the risk of default away from EBF, the existence of the personal guaranty does not support a finding that the Funding Agreement is a loan.

In light of the foregoing, the Court concludes that the Funding Agreement constitutes a sale of future receipts, not a loan, and that the Trustee has not stated a cognizable claim based on a usury theory. Accordingly, the Court will dismiss that portion of Count I seeking declaratory relief, as well as Count II and Count IV.

The balance of Count I focuses on the alleged insufficiency of the proof of claim and its supporting documents, the requirements for which are set out in Rule 3001 of the Federal Rules of Bankruptcy Procedure. The sufficiency of EBF's proof of claim goes to whether the claim is entitled to *prima facie validity*, not whether the claim should be allowed or disallowed. Allowance (or disallowance) of a claim is governed by § 502 of the Bankruptcy Code, where subsection (b) enumerates nine (9) distinct grounds on which a claim could be disallowed. The Trustee has not pled any facts that invoke any of the enumerated bases on which a claim could be disallowed under § 502. Accordingly, the Court will also dismiss this remaining portion of Count I.

The Court has reviewed the allegations raised by the Trustee in the remainder of the Amended Complaint, and has carefully considered the briefs and arguments of the parties in support of and in opposition to dismissal. At this stage in the proceeding, the Court concludes that the Trustee has ***plausibly*** alleged claims for relief sufficient to survive dismissal as to the remaining claims in the Amended Complaint, which assume the Funding Agreement is a sale:

- Count III plausibly alleges each of the elements of a fraudulent transfer: while insolvent, the debtor transferred an interest in property for less than reasonably equivalent value;

17

- Count V plausibly alleges each of the elements necessary to avoid a fraudulent transfer: while insolvent, the debtor transferred an interest in property without fair consideration;

- Count VI plausibly alleges the elements of a preferential transfer: while insolvent, the debtor transferred an interest in property within ninety (90) days of the petition date to or for the benefit of EBF resulting in EBF receiving more than it would under a chapter 7 liquidation;

- Count VII plausibly alleges the elements of a turnover action: EBF is in possession of property of the estate that would otherwise be available to the estate for use, sale, or lease;

- Count VIII plausibly alleges the elements of a disallowance action: EBF's proof of claim is disallowable because there is recoverable property or an avoidable transfer that has not been returned or repaid; and,

- Count IX plausibly alleges the elements of a recovery action: assuming the Trustee can avoid a transfer under one of the other counts identified above, he would be entitled to recover that transfer.

In seeking dismissal of these counts, EBF challenges the merits of the Trustee's allegations, raising arguments that are more appropriately considered on a motion for summary judgment or at trial. At this pleading stage, the Court accepts all of the Trustee's well-pled allegations as true. Pursuant to the standards applicable to motions to dismiss under Civil Rule 12(b)(6), the Court concludes that the Trustee has moved his claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678. Accordingly, the Court will deny EBF's Motion to Dismiss as to Counts III, V, VI, VII, VIII, and IX.

### Conclusion

In sum, as the Court has explained, the Trustee's amended complaint fails to meet the plausibility requirement in alleging that the Funding Agreement is a loan. Under the non-exhaustive three-factor test set forth in *LG Funding*, and considering the Trustee's factual allegations in the most favorable light to the Trustee, the Court finds, on the record before it, that

18

the Funding Agreement is a sale.  Accordingly, dismissal of those counts and claims that are based on the presumption that the Funding Agreement is a loan is appropriate.

On the other hand, the Court concludes that at this stage, dismissal of the remaining counts (that are based on the presumption that the Funding Agreement is a sale) is not warranted.  For those counts, the Trustee has alleged sufficient facts that, if proven at trial, could plausibly warrant the relief requested therein.

A separate Order will issue.

cc:     All Counsel

**END OF MEMORANDUM OPINION**